# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TRINA J.[1]**, | Case No. 6:19-cv-435-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **ANDREW M. SAUL,** Commissioner of Social Security, | |
| Defendant. | |

Brent Wells and Katherine L. Eitenmiller, HARDER, WELLS, BARON & MANNING, P.C., 474 Willamette Street, Eugene, OR 97401. Of Attorneys for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; David J. Burdett, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Trina J. brings this action pursuant to § 405(g) of the Social Security Act (the

Act), *as amended*, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's

application for Supplemental Security Income (SSI) under Title XVI of the Act. For the

following reasons, the Commissioner's decision is REVERSED and REMANDED for further

proceedings consistent with this opinion.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper

legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see*

*also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means

"more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec.*

*Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039

(9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the

Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th

Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's

interpretation is a rational reading of the record, and this Court may not substitute its judgment

for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193,

1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may

not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495

F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th

Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the

Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554

F.3d at 1226.

**BACKGROUND**

**A. Plaintiff's Application**

On October 17, 2013, Plaintiff applied for SSI, alleging disability beginning August 1, 2004. AR 104. The agency denied the claim both initially and upon reconsideration. AR 104-17, 118-33. Plaintiff previously had applied for SSI alleging the same disability onset date. AR 15. That application was denied on January 3, 2013, and Plaintiff did not appeal that denial. *Id.*

Plaintiff appealed the denial of her October 2013 application for SSI and requested a hearing before an Administrative Law Judge (ALJ). She testified before a hearing in July 2016. AR 15. Because the ALJ proffered new evidence after the hearing, Plaintiff requested and received a supplemental hearing. *Id.* In a decision dated March 7, 2018, the ALJ found that Plaintiff was not disabled. AR 10-28. The ALJ concluded that because Plaintiff's previous application was denied, Plaintiff did not appeal that denial, and Plaintiff did not present any new and material evidence relating to that denial or that time period, Plaintiff's SSI claim for that time period was foreclosed under the doctrine of *res judicata*. The ALJ considered Plaintiff's application as of October 17, 2013, as if it were a new, subsequent application with a period of disability as of the application date. Plaintiff was born on October 15, 1976, making her 37 years old at the disability date as construed by the ALJ. AR 119.

Plaintiff timely appealed the ALJ's decision to the Appeals Council, which denied the appeal in January 2019. AR 1-4. Accordingly, the ALJ's decision became the final decision of the Commissioner. AR 1. Plaintiff seeks judicial review of that decision. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

**B. The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R.
    §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
    significant mental or physical duties done or intended to be done for pay
    or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
    such work, she is not disabled within the meaning of the Act. 20 C.F.R.
    §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
    substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's
    regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
    impairment or combination of impairments is "severe" if it significantly
    limits the claimant's physical or mental ability to do basic work activities.
    20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
    this impairment must have lasted or be expected to last for a continuous
    period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the
    claimant does not have a severe impairment, the analysis ends. 20 C.F.R.
    §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe
    impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the
    impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
    then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii),
    416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
    the listed impairments, the analysis continues. At that point, the ALJ must
    evaluate medical and other relevant evidence to assess and determine the
    claimant's "residual functional capacity" (RFC). This is an assessment of
    work-related activities that the claimant may still perform on a regular and
    continuing basis, despite any limitations imposed by his or her
    impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e),

416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis
proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC
        assessment? If so, then the claimant is not disabled. 20 C.F.R.
        §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform
        his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience,
        is the claimant able to make an adjustment to other work that exists in
        significant numbers in the national economy? If so, then the claimant is
        not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v),
        404.1560(c), 416.960(c). If the claimant cannot perform such work, he or
        she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

        The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however,

the Commissioner proves that the claimant can perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54;

*Tackett*, 180 F.3d at 1099.

**C.  The ALJ's Decision**

        At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since October 17, 2013. AR 18. At step two, the ALJ found that

Plaintiff has severe impairments of obesity; fibromyalgia; mild degenerative disc disease; minimal right knee osteoarthritis; migraine; De Quervain's tenosynovitis; carpal tunnel syndrome; major depressive disorder; post-traumatic stress disorder (PTSD); panic disorder; trochanteric bursitis; quadriceps tendonitis; seronegative rheumatoid arthritis; pain disorder; borderline intellectual functioning; and somatic symptoms disorder. *Id.* At step three, the ALJ determined that Plaintiff does not have an impairment that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 20. As for Plaintiff's mental impairments, the ALJ found that Plaintiff had a moderate limitation in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. AR 22. The ALJ found that Plaintiff had only a mild limitation in understanding, remembering, or applying information. *Id.*

The ALJ next determined Plaintiff's RFC and found that Plaintiff could perform

> sedentary work as defined in 20 CFR 416.967(a) except that she can: never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs, balance, stoop, kneel, and crouch; and should never crawl. She can perform occasional pushing and pulling; occasional operation of foot controls; occasional overhead reaching; frequent reaching in all other directions; and frequent handling and fingering. She is also limited to the performance of simple, routine, repetitive tasks consistent with unskilled work. She should be limited to performing low-stress work, which is defined as work requiring few decisions and few changes throughout the workday. She should be limited to occasional contact with the public, with co-workers, and with supervisors. She can perform at a standard or ordinary pace hut not at a strict production rate pace in which the individual has no control over the speed of the work She should avoid concentrated exposure to hazards and to extreme temperatures.

AR 20.

At step four, the ALJ found that Plaintiff had no past relevant work. AR 31. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff

could perform jobs that exist in significant numbers in the national economy, including

Addresser, Document Preparer, and Cutter Paster. AR 32. Thus, the ALJ found that Plaintiff was

not disabled. *Id*.

## DISCUSSION

Plaintiff contends that the ALJ erred thrice. First, she argues that the ALJ improperly

interpreted the medical expert testimony of Dr. Faren Akins. Second, Plaintiff argues that the

ALJ improperly rejected her subjective symptom testimony. Third, Plaintiff argues that the ALJ

erred in rejecting the statements of a lay witness. Plaintiff also requests that the Court credit as

true the allegedly improperly discounted testimony and remand for an immediate award of

benefits. The Court addresses each in turn.

## A.  Medical Expert Testimony of Dr. Akins.

The ALJ assigned partial weight to the testimony of Dr. Akins, a reviewing medical

expert. The ALJ rejected Dr. Akins's opinion that Plaintiff had a moderate limitation in

understanding, remembering, or applying information because the opinion was "inconsistent

with the evidence." The ALJ rejected Dr. Akins's testimony that Plaintiff may have disabling

absences and interruptions caused by her depression for the same reason. In discussing

Dr. Akins's testimony about Plaintiff's possible absences and interruptions, the ALJ stated that

Dr. Akins "did not opine that any of [Plaintiff's] impairments meet or equal a listing." AR 30. In

addition to arguing that the ALJ improperly discounted Dr. Akins's opinions, Plaintiff argues

that this statement misrepresents or ignores parts of Dr. Akins's testimony.

### 1.  Standards

The ALJ must resolve conflicts in the medical record, including conflicts among

physicians' opinions. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 155, 1164

(9th Cir. 2008). The Ninth Circuit and the Commissioner[2] distinguish between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *see also* 20 C.F.R. §§ 404.1527(c)(1), (2); 416.927(c)(1), (2). "The Commissioner may reject the opinion of a non-examining physician by reference to specific evidence in the record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998). The opinion of a reviewing physician who testifies at the hearing and is subject to cross examination is entitled to greater weight than the opinions of other non-treating, non-examining physician. *Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995).

"The ALJ must explicitly reject medical opinions, or set forth specific, legitimate reasons for crediting one medical opinion over another." *Garrison*, 759 F.3d at 1012 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)). An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language." *Id.* at 1013. Thus, the ALJ's weighing or rejection of a non-treating, non-examining witness must be supported by substantial evidence. *See Sousa*, 143 F.3d at 145 (holding that the Appeals Council's rejection of an examining medical expert's testimony was not supported by substantial evidence). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

----

[2] Because Plaintiff filed her application before March 17, 2017, the application is governed by 20 C.F.R. §§ 404.1527 and 416.927, and the revised rules relating to the consideration of medical opinion testimony do not apply.

interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157

F.3d at 725). In other words, "[t]he ALJ must do more than offer his conclusions. He must set

forth his own interpretations and explain why they, rather than the doctors', are correct."

*Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

Substantial evidence further requires the ALJ to consider the evidence holistically, rather than

cherry-picked evidence supporting the ALJ's conclusion. *See Holohan*, 246 F.3d at 1207.

### 2. Dr. Akins's Testimony

Dr. Akins was a neutral, non-treating and non-examining expert witness who testified at

both the initial and supplemental hearing. *See* AR 54, AR 82. At the initial hearing, Dr. Akins

noted that Plaintiff had been diagnosed with PTSD, panic disorder, recurrent, severe major

depressive disorder, other non-specified depressive disorder, and pain disorder associated with

psychological factors. AR 55. Dr. Akins testified that Plaintiff presented "a very inconsistent

record" and that different conclusions about the severity of Plaintiff's conditions could be

reached "depending on what parts of [the record] you examine." AR 56. He also discussed the

inconsistencies in Plaintiff's record, explaining:

> [T]here's certainly elements of the record tha[t] would suggest that
> [Plaintiff] does have serious mental illness and problems that
> would be debilitating.
>
> But there are other parts of the record . . . that seem to
> indicate either things have somehow gotten better or someone else
> examining [Plaintiff] has a different point of view. So charged with
> that the best I can do is put it all together in a big stew and offer
> you an opinion as more than likely than no[t], and I just don't have
> enough information to see that its more likely than not that
> [Plaintiff] cannot work full-time doing any kind of work given that
> [Plaintiff] is working full-time as the mother of her children.

AR 65-66. "[T]to err on the side of caution" Dr. Akins testified, he would conclude that

Plaintiff's limitations were "less than marked" in the categories of "activities of daily living,"

"social functioning," and "pace and persistence." AR 57-58. He also noted, however, that at some points in the record Plaintiff's limitations were marked. AR 60.

At the supplemental hearing, Dr. Akins acknowledged additional diagnoses of persistent depressive disorder, and somatic symptom disorder. AR 1573. Dr. Akins continued to acknowledge the inconsistencies in Plaintiff's records at the supplemental hearing. When asked whether Plaintiff met or equaled a listing, Dr. Akins testified that it was "possible" that Plaintiff's mental health impairments met or equaled a listing, but if so, it would only be "for a closed period." AR 1574. That was so, Dr. Akins testified, because the record was inconsistent about how severely Plaintiff's diagnoses impaired Plaintiff's functionality, "[w]ith some of the record as early as 2012 not supporting the listing and perhaps some of the record in that same period of September of 2013 that would." AR 1575. While "all the other evaluations seem to find much less serious limitations," during a September 2013 evaluation, Dr. David Truhn found that Plaintiff had a "very low GAF [Global Assessment of Functioning] score of 43," had a working memory score of 69, and had severe major depressive disorder. AR 1576-78.

Dr. Akins was not sure what to make of the 2013 evaluation. He opined that "while [the September 2013 evaluation] was well done and very thorough . . . it may be more on the severe side than some of the other records we have." AR 1577. For example, Dr. Akins explained, just five months later an examiner "didn't seem to think that there were such serious problems that they could conclude that [Plaintiff] absolutely would not be able to work." AR 1577-78. Similarly, the low working memory score was the "only . . . score that fell below 70. All the other IQ scores, at the time of administration, were above that cutoff line of 70." AR 1576-77.

Dr. Akins then went through each Paragraph B factor, concluding that Plaintiff had a mild to moderate limitation in the ability to interact with others; a moderate to marked limitation

in concentrating, persisting, and pace; a moderate limitation in adapting or managing oneself; and a moderate limitation in understanding, remembering, or applying information. AR 1579-81. Dr. Akins based his opinion that Plaintiff had a moderate limitation in understanding, remembering, or applying information on the fact that Plaintiff "did manage to complete some high school education" and that Plaintiff's test scores, particularly a test score for working memory, were low. AR 1579-80. Based on those factors, Dr. Akins concluded that Plaintiff did not meet a listing. AR 1581.

Dr. Akins also offered his opinion on the workplace limitations caused by Plaintiff's impairments. Dr. Akins opined that "claimant should be able to engage in simple, repetitive tasks and that increasing amount of complexity would be associated with decreasing . . . effectiveness." AR 1583. Plaintiff, Dr. Akins testified, could have "occasional interaction[s] with others, but for no more than a third of the day. *Id.* Dr. Akins also testified that Plaintiff could not do "something that is time limited." *Id.* When asked about whether Plaintiff might suffer absences or interruptions that would impair her ability to work, Dr. Akins testified that Plaintiff "can probably get to work but . . . would have some interruptions once she got there." AR 1584. He added that "it's not improbable that there would be breakthrough symptoms from the PTSD and the depression" and that "if she's having a severe depressive episode, . . . she might not be able to get out of bed and get up and go to work and be there on a consistent basis." *Id.* Dr. Akins was unable, however, to say how often the absences or interruptions would occur or how severely this limitation might impair Plaintiff's ability to find gainful employment. *Id.*

### 3. Analysis

#### a. Moderate Limitation in Understanding, Remembering, and Applying Information

The ALJ rejected Dr. Akins's opinion that Plaintiff had a moderate limitation in understanding, remembering, or applying information because (1) Dr. Akins relied on "only one low IQ score"; (2) "[t]here were no other concerns raised about the [Plaintiff]'s ability to understand information"; (3) an examiner suggested that motivation issues undermined the validity of Plaintiff's low IQ score; (4) Dr. Susan South, an examining psychologist, "did not observe any intellectual issues" with Plaintiff in 2014; and (5) "[Plaintiff] had higher IQ scores at the 2016 psychological consultive examination. AR 30.

"The Commissioner may reject the opinion of a non-examining physician by reference to specific evidence in the record." *Sousa*, 143 F.3d at 1244. An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language." *Garrison*, 759 F.3d at 1013. Thus, the ALJ's weighing or rejection of a non-treating, non-examining witness must be supported by substantial evidence. *See Sousa*, 143 F.3d at 145 (holding that the Appeals Council's rejection of an examining medical expert's testimony was not supported by substantial evidence). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725).

Here, the ALJ identified specific evidence in the record justifying rejection of Dr. Akins's opinion and that evidence, taken together, constitutes substantial evidence. First, Dr. South's observation that she "did not experience [Plaintiff] as being cognitively impaired, or

intellectually challenged," *see* AR 650, is specific evidence supporting the ALJ's rejection of Dr. Akins's opinion. Indeed, because Dr. South is an examining medical expert, her opinion generally is entitled to greater deference than is Dr. Akins's. *See* 20 C.F.R. § 416.927(a)(1). Plaintiff argues that Dr. South did not perform testing with Plaintiff. *See* AR 650 ("I did not experience [Plaintiff] as being cognitively impaired, or intellectually challenged *although I did not perform testing with her*." (emphasis added)). Dr. South, however, did ask Plaintiff to spell the word "world" backwards, perform basic calculations, and respond to hypothetical situations like smelling smoke in a theater. AR 649. Plaintiff successfully completed these tasks. *Id.* Dr. South also opined that Plaintiff could manage her own money and found Plaintiff's "intelligence . . . consistent with someone who was an average high school graduate." *Id.* Thus, Dr. South's observation about Plaintiff's intelligence was informed by her examination of Plaintiff.

Second, Plaintiff's more recent, higher IQ scores are yet another piece of specific evidence supporting the ALJ's rejection of Dr. Akins's opinion. In 2016, Plaintiff scored an 88 on the WAIS IV IQ test, including scoring 86 on working memory. More recent IQ scores are generally more persuasive than older scores. *See Lopez v. Comm'r*, 2016 WL 4107695, at *9 (D. Or. 2016) (finding that the ALJ did not err in rejecting a claimant's subjective symptom testimony based on improved recent IQ scores); *cf Holler v. Berryhill*, 2017 WL 4546380, at *3 (W.D. Wash. Oct. 12, 2017) (noting that an older, above-listing-level IQ score did not alone substantially undermine a recent, listing-level IQ score). Because Dr. Akins focused on Plaintiff's earlier low working memory score in his testimony, the higher working memory score in 2016 is particularly relevant.

The ALJ's remaining bases for rejecting Dr. Akins's opinion are insufficient. The ALJ's finding that Dr. Akins relied on a single, low IQ score to support his opinion that Plaintiff has a moderate limitation misstates Dr. Akins's testimony and is therefore not substantial evidence supporting the ALJ's decision to reject Dr. Akins's opinion. Dr. Akins explained that Plaintiff had a moderate limitation because Plaintiff "did manage to complete some high school education and [her] test scores are low, and in particular, this one for working memory." AR 1579. Thus, Dr. Akins's opinion was not based on one low IQ score, but instead on Plaintiff's particularly low *working memory* score, other low test scores, and Plaintiff's limited education. The ALJ's finding that motivational issues impacted Plaintiff's IQ scores is not substantial evidence supporting the ALJ's rejection of Dr. Akins's opinion for similar reasons. The ALJ is correct that Dr. David Truhn, the psychiatrist who administered the IQ test where Plaintiff received a low working memory score, believed that the low score might have been the result of "motivation issues." *See* AR 568. The ALJ, however, ignores that Dr. Truhn also opined that the score "seems to be consistent with [Plaintiff's] abilities." *Id.* Finally, the ALJ's vague observation that "[t]here were no other concerns raised about the claimant's ability to understand information," meanwhile, is not specific evidence. Because the ALJ's decision to reject Dr. Akins's opinion is supported by other substantial, specific evidence, the insufficiency of these reasons is harmless.

### b. Disabling Absences and Interruptions

The ALJ also rejected Dr. Akins's opinion that Plaintiff may have disabling absences or interruptions that impair Plaintiff in the workplace. The ALJ found that the medical record did not support a conclusion that Plaintiff had a disabling level of interruptions. AR 30. The Court finds no error. Indeed, Dr. Akins testified to the same. Dr. Akins stated only that it was "not improbable" that Plaintiff could have breakout symptoms and that she "might" have interruptions that would impair her ability to go to work. These are equivocal statements to which the ALJ did

not need to respond. Importantly, Dr. Akins characterized these equivocal statements as

"speculation" because "no one else in the record that I saw has—has made that claim." AR 1584.

Thus, they are both equivocal and speculative.

Plaintiff also appears to argue that the ALJ erred by relying on GAF scores to reject

Dr. Akins's testimony about Plaintiff's interruptions because "consistent with the ALJ's

conclusion regarding the GAF scores in the record, Dr. Akins testified that some of the written

chart notes did not match the low GAF scores." ECF 17 (Pls.' Br.) at 10. The ALJ, however, did

not primarily rely on GAF scores to reject Dr. Akins testimony about absences and interruptions.

Instead, the ALJ rejected the testimony because it was "not supported by the medical evidence."

AR 30. As explained above, Dr. Akins agreed that the medical evidence did not support a finding

that Plaintiff had a disabling level of absences or interruptions. AR 1584. Moreover, Plaintiff

acknowledges that the ALJ and Dr. Akins *agree* that Plaintiff's GAF scores deviate from her

treatment records.

### c.  Listing-level Impairment

The ALJ stated that Dr. Akins "did not opine that any of [Plaintiff's] impairments meet or

equal a listing." AR 30. Plaintiff argues that the ALJ's statement ignores or misrepresents

Dr. Akins's testimony from the following exchanges:

> Q      All right. And do you believe that claimant's condition
> either meets or, in combination, equals the Social Security -- any
> of the Social Security listings in this case?
>
> A      **Well, it's possible.** But if we go that direction, it would be
> primarily for a closed period. The early part of the record appears
> to have more information about the claimant's condition being
> quite serious, as far back as March, of 2010.

AR 1574 (emphasis added). When the ALJ specified that Dr. Akins should look at August 2012

and after, Dr. Akins answered:

> Well, the record's going to be a little bit divided then, given that
> period of time. With some of the record, as early as 2012, not
> supporting a listing, and, **perhaps, some of the record, in that
> same time period, of September 2013, that would.**

AR 1575 (emphasis added).

The Court does not find that the ALJ misrepresented Dr. Akins's testimony. Dr. Akins

testimony about whether Plaintiff met a listing was equivocal. He said "it's *possible*" that

Plaintiff's impairments met a listing before August 2012 and "*perhaps*, some of the record"

from 2013 would suggest that Plaintiff's impairments met or equaled a listing. AR 1574-75

(emphasis added). Dr. Akins even stated his intent to be equivocal on this point. *See* AR 65-66

("[T]he best that I can do is put it all together in a big stew and offer you an opinion . . . and I

just don't have enough information to see that its more likely than not that this person cannot

work full-time . . . ."); Plaintiff can point to no portion of Dr. Akins testimony where Dr. Akins

testified that during the relevant period Plaintiff met a listing.

Dr. Akins's conclusion, meanwhile, suggested that Plaintiff's impairments did not meet

or equal a listing, even for a closed period. At the supplemental hearing, Dr. Akins testified that

the "record, as a whole, didn't seem to support" a listing-level impairment. *Id.* He found no

marked or severe limitation for any of the Paragraph B factors. *See* AR 1579-81. Dr. Akins

acknowledged the more severe evaluation from September 2013, but explained why he believed

that evaluation varied from other evaluations in the record. *See* AR 1578 ("[W]ith the exception

of the one evaluation that was done back in September, of 2013 . . . all the other evaluations

seem to find much less serious limitations."). Even when Plaintiff's counsel asked Dr. Akins to

limit his assessment of the Paragraph B factors to 2013 through 2014, Dr. Akins declined to

conclude that Plaintiff met a listing for that period, explaining that "even looking at the one

evaluation we have from that period . . . from February, of 2014—its pretty much directly at

odds with that one evaluation from September, of 2013." AR 1589. Ultimately, Dr. Akins

testified that he "would prefer to stand on the opinion I've offered [that Plaintiff's limitation did

not meet a listing]." *Id.* Dr. Akins's testimony, when viewed holistically, reveals his conclusion

that Plaintiff's impairment did not meet or equal a listing. The ALJ's decision accurately reflects

this conclusion.

Nor did the ALJ improperly ignore Dr. Akins's testimony. An ALJ "need not discuss *all*

evidence presented to her." *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)

(emphasis added). Indeed, an ALJ need only explain reasons for rejecting "significant probative

evidence." *Id.* at 1395. Some courts have suggested that "equivocal" statements are not

"significant probative evidence." *See Dykes v. Berryhill*, 2017 WL 5625994, at *7 (W.D. Wash.

Nov. 22, 2017) (finding that an ALJ's decision to assign little weight to a psychiatrist's opinion

was reasonable because the opinion was "speculative and couched in equivocal terms"). That is

even truer where the ALJ "rel[ies] on [a medical expert's] ultimate conclusions regarding mental

abilities, rather than a single equivocal statement." *See Whiteley v. Berryhill*, 2019 WL 483324,

at *4 (citing *Vincent*, 739 F.2d at 1395).

As explained above, the statements of Dr. Akins that Plaintiff emphasizes were equivocal

while Dr. Akins's testimony as a whole was that Plaintiff's impairments did not meet or equal a

listing. His equivocal statement did not create an ambiguity that required clarification by the ALJ

or further development of the record. Nor was the ALJ required to explain why he rejected

Dr. Akin's equivocal remark that "perhaps, some of the record, in that same time period, of

September 2013, that would [meet or equal a listing]." *See Whiteley*, 2019 WL 483324, at *4.[3]

_____

[3] In her reply, Plaintiff argues that the Court must reject the Commissioner's argument
that the ALJ's silence was not error because the ALJ was not required to respond to Dr. Akins

**B. Plaintiff's Subjective Symptom Testimony**

**1. Standards**

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[4] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering

---

equivocal statement. Plaintiff asserts such argument is an improper *post hoc* rationale that the Court may not consider. *See Bray*, 554 F.3d at 1225 ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."). The Commissioner, however, is not advancing a *post hoc* rationale for the ALJ's decision to discount Dr. Akin's opinion. Instead, the ALJ is making a legal argument about what is required of an ALJ confronted by an equivocal statement within a medical expert's testimony. It is not improper for the Court to consider legal arguments about what the law requires of an ALJ to determine whether the ALJ committed legal error.

[4] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

PAGE 18 – OPINION AND ORDER

specific, clear, and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*

*v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883. In the context of mental health, however, "[r]eports of 'improvement' . . . must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms[.]" *Garrison*, 759 F.3 at 1017.

### 2.  Plaintiff's Symptom Testimony

At the initial hearing, Plaintiff testified that, for three years, she had experienced "extreme pain" in her neck, arms, and right side of her body, that "makes it hard for work." AR 49. She rated the pain a five on a scale of one to ten, but explained that the pain was as much as an eight about once a week. AR 50, 70. This pain, which is caused by her muscles tightening, "makes it hard to sleep, makes it hard to function." AR 49-50. Plaintiff explained that she took Baclofen, a muscle relaxer, to treat this pain. AR 50. Plaintiff also testified that she enjoys swimming. AR 52.

Plaintiff testified that, about twice a month, she had headaches that often made it difficult to function and sometimes were debilitating. AR 71. Plaintiff also testified that she gets very tired and about twice a month gets so tired that she has to rest for more than one hour before she can function again. AR 72. Plaintiff takes Nortriptyline and Topiramate to treat her migraines. AR 50-51.

Finally, Plaintiff testified that she suffers anxiety and depression resulting from childhood trauma. AR 51-52. Plaintiff's depression made her "not want[] to do stuff." AR 51. She described having a "racing heart, sweatiness," difficulty breathing, and panic attacks when she experiences anxiety. AR 53-54. Plaintiff takes Nortriptyline to treat her depression. AR 51. Plaintiff testified that, although she had made progress on her anxiety and depression through

counseling, her anxiety and depression still interfere with her ability to complete basic tasks daily. *Id.*; AR 69.

Plaintiff testified that the combination of these symptoms impairs her ability to care for her two daughters. Although the daughters, then ages nine and 14, were independent enough to dress themselves and handle their personal care, Plaintiff provided food and clean clothes for them. AR 68. Plaintiff's migraine headaches and pain, however, made it difficult for her to complete household chores. AR 53. Plaintiff's anxiety, meanwhile, made it difficult for her to be around crowds, meaning she struggled with shopping for food for her children. AR 53-54.

At the supplemental hearing, Plaintiff testified that her pain level was about the same as in the initial hearing. AR 1595. In the fifteen months since the last hearing, however, she began experiencing "muscle spasms, joint swelling," joint pain, nausea, cramping, and body pains. AR 1593. The joint pain was in Plaintiff's "ankles, hands, hips, and knees." AR 1599. Plaintiff was taking Methotrexate and Humira and elevating her ankle to treat the joint pain and swelling. *Id.*; AR 1600. Although the medicine had reduced the swelling, Plaintiff still experienced the pain. AR 1593. Because of those symptoms, Plaintiff testified, she could only stand or walk around for 20 minutes to an hour before needing to rest. AR 1595. At least once per week, sometimes more often, Plaintiff testified that her pain renders her unable to do household chores. AR 1601. Plaintiff also testified that she has headaches two or three times per week and that about twice per month those headaches render her unable to function for four or more hours. AR 1600-01.

Plaintiff also testified that, after the initial hearing, she had to stop seeing her counselor because the counselor was too far away. AR 1595-96. Plaintiff was seeking a new counselor and was speaking with friends and church colleagues to help her manage her mental health in the

interim. AR 1596. Plaintiff remained on her mental health medications and thought they helped, but also testified that she did not "know if [she was] still on the right dose because there's some months that [she felt] a little more depressed than others." *Id.*

### 3. Analysis

The ALJ found that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms" but that her "statements concerning the intensity, persistence and limiting effects of [Plaintiff's] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 24. The ALJ noted that Plaintiff's physical symptoms "are inconsistent because of generally normal findings on physical examination such as normal gait, normal strength, normal sensation"[5] and "[s]he reported doing laundry, cleaning the bathroom, and washing dishes." *Id.* The Court construes this as the ALJ providing two reasons for discounting Plaintiff's physical symptoms—that they were not supported by the medical evidence and that they were inconsistent with Plaintiff's activities of daily living. The ALJ stated that for Plaintiff's "alleged mental deterioration, the medical evidence of record does not support the degree to which the claimant said she is limited." *Id.* The ALJ then summarized the medical record.

The only specific testimony discussed by the ALJ was Plaintiff's testimony about "less than sedentary exertion," including the joint pain in Plaintiff's wrist, Plaintiff's hip pain, and Plaintiff's migraine headaches. This was a third reason provided by the ALJ to discount Plaintiff's physical symptoms. Otherwise, the ALJ did not identify specific testimony that was inconsistent with, or not supported by, specific evidence in the record.

---

[5] The Court notes that although the ALJ characterized this as Plaintiff's symptoms being "inconsistent" with the medical record, what the ALJ described here was Plaintiff's symptoms not being supported by the objective medical evidence.

The ALJ was required to specifically identify what evidence contradicted what testimony. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (stating that an ALJ may not vaguely conclude that "a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific findings in support' of that conclusion" (quoting *Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009)). "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination," but must "specify which testimony she finds not credible," and the district court may not "comb the administrative record to find specific conflicts." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015); *see also Smolen*, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (holding that it is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible"); *Nan B. v. Saul*, 2020 WL 6636221, at *6 (D. Or. Nov. 12, 2020) (finding that the ALJ's summary of the medical record, statement that the claimant's testimony "was not entirely consistent with the medical evidence and other evidence 'for the reasons explained in this decision,'" and failure to "discuss which testimony about what limitations he is crediting or discrediting, and why" was legal error). The Court does not accept the ALJ's recitation of the medical evidence as providing any other basis on which to discount Plaintiff's testimony regarding the limitations caused by her impairments, other than the reasons specifically noted.

### a.  Activities of Daily Living

The ALJ rejected Plaintiff's symptom testimony because it conflicted with Plaintiff's activities of daily living, which included doing laundry, cleaning, and washing dishes. AR 24.

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn*, 495 F.3d at 639. For daily activities to discount subjective symptom testimony, the activities need not be equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."); *Reddick*, 157 F.3d at 722 (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over several months or years and to treat them as a basis for concluding that a plaintiff can work. *See Garrison*, 759 F.3d at 1017.

The ALJ's reliance on Plaintiff's activities of daily living to reject Plaintiff's testimony that her physical symptoms are disabling suffers at least two flaws. First, the ALJ did not explain which subjective symptom testimony the activities refuted. The ALJ explained that Plaintiff

"reported doing laundry, cleaning the bathroom, and washing dishes." AR 24. The ALJ

described what evidence suggests the complaints are not credible but did not connect it to

specific portions of Plaintiff's symptom testimony. That falls short of the ALJ's duty to make

more than "only general findings." *Dodrill*, 12 F.3d at 918. Even if it were obvious which of

Plaintiff's testimony the ALJ believed was refuted—and it is not obvious—"a reviewing

court . . . may not affirm the Commissioner on a ground upon which the Commissioner did not

rely." *Bray*, 554 F.3d at 1226.

    Nor do these activities refute Plaintiff's symptom testimony. Although, "[e]ngaging in

daily activities that are incompatible with the severity of symptoms alleged can support an

adverse credibility determination," *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014),

"many home activities are not easily transferable to what may be the more grueling environment

of the workplace, where it might be impossible to periodically rest or take medication." *Fair*, 885

F.2d at 603. For example, in *Trevizo v. Berryhill*, the Ninth Circuit held than an ALJ erred in

relying on the claimant's childcare activities to refute testimony about the severity of her back

and joint pain, fatigue, and weakness. 871 F.3d 664, 682 (9th Cir. 2017). Unlike in the

workplace, the Ninth Circuit explained, the claimant's "childcare responsibilities permit her to

rest, take naps, and shower repeatedly throughout the day." *Id.*

    The same is true of Plaintiff. Although Plaintiff testified to performing chores, she noted

that headaches, joint pain, or other body pains required her to take breaks and sometime

incapacitated her for four or more hours. AR 1595, 1600-01. Similarly, Plaintiff's depression

interfered with her motivation to complete chores. AR 51. Finally, Plaintiff testified that her

daughters—who were old enough to care for themselves—assisted with chores. AR 1598. An

employer likely would not permit long periods of inactivity because of depression-driven

motivational issues or need to rest. Nor could Plaintiff's daughters assist Plaintiff at work. The ALJ erred by rejecting Plaintiff's testimony that her symptoms were disabling based on inconsistencies between that testimony and Plaintiff's activities of daily living.

### b.  Lack of Support in the Objective Medical Evidence

Plaintiff argues that the ALJ's reliance on medical evidence showing Plaintiff has normal gait, strength, and sensation ignores the ALJ's own finding that Plaintiff has fibromyalgia. For Plaintiff's testimony about her mental health symptoms, Plaintiff argues that the ALJ relied on cherry-picked evidence of improved symptoms.

An ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, reject subjective pain testimony only because it was not fully corroborated by objective medical evidence. *Robbins*, 466 F.3d at 883; *see also Reddick*, 157 F.3d at 722 ("Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence"); 20 C.F.R. § 404.1529(c)(2) (noting that the Commissioner will not "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"). Again, it is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill,* 12 F.3d at 918 (9th Cir. 1993).

### i.  Physical Symptoms

There are at least three errors with the ALJ's discounting Plaintiff's testimony regarding the limitations caused by her physical symptoms because the testimony was not supported by the objective medical evidence. First, the ALJ did not specify which of Plaintiff's pain testimony

was unsupported by the medical evidence. This runs afoul of the Ninth Circuit's repeated admonition that an ALJ must specifically identify the testimony the ALJ is discounting. *See, e.g.*, *Brown-Hunter*, 806 F.3d at 489; *Smolen*, 80 F.3d at 1284; *Dodrill*, 12 F.3d at 918. The ALJ summarized physical examinations of Plaintiff in the medical record. *See* AR 24 (citing multiple records describing Plaintiff's gait, strength, and sensation as normal). The ALJ did not, however link that medical evidence to any specific testimony. That was legal error. On remand, the ALJ should specify which of Plaintiff's pain testimony is unsupported by the objective medical evidence.

Second, the ALJ's reliance on medical evidence showing that Plaintiff had normal gait, strength, and sensation does not account for the ALJ's finding that Plaintiff had fibromyalgia. *See* AR 18 ("The claimant has the following severe impairments: obesity; *fibromyalgia* . . . .") (emphasis added). "Fibromyalgia's cause is unknown, there is no cure, and it is poorly-understood within much of the medical community." *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004). The symptoms of fibromyalgia can wax and wane. *See* SSR 12-2p, *available at* 2012 WL 3104869. As the Ninth Circuit has explained, an unusual characteristic of fibromyalgia is that, despite causing symptoms that include "chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue," *Benecke*, 379 F.3d at 589, those who suffer from fibromyalgia often have normal muscle strength, sensory functions, and reflexes. *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017). Given Plaintiff's fibromyalgia, a finding that Plaintiff had normal gait, strength, and sensation is not alone clear and convincing evidence sufficient to reject Plaintiff's testimony. *See id.* at 656.

Finally, the "Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ here did exactly that—he acknowledged that Plaintiff's impairments could be expected to cause the alleged symptoms but rejected Plaintiff's testimony relating to her physical limitations because the medical record did not support Plaintiff's account of the severity of those symptoms. Because the ALJ offered no other valid reason for rejecting Plaintiff's testimony, his was legal error.

### ii.  Less than Sedentary Limitations

The ALJ rejected Plaintiff's "alleged limitation to less than sedentary exertion" because "the medical evidence of record does not support the degree to which the claimant said she is limited." AR 26. Unlike the ALJ's discussion of his reasons for rejecting Plaintiff's other physical symptom testimony, the ALJ's discussion of his reasons for rejecting Plaintiff's testimony about her sub-sedentary limitations did identify specific testimony of the Plaintiff; namely, Plaintiff's testimony about joint pain in her wrist, hip pain, and migraine headaches. The ALJ's rejection of this testimony was nevertheless improper because the ALJ only found that the testimony was unsupported by objective medical evidence.

As explained above, an ALJ may not reject subjective pain testimony only because it was not fully corroborated by objective medical evidence. *Robbins*, 466 F.3d at 883. Here, that is the reason the ALJ gave for rejecting Plaintiff's testimony in support of her alleged limitation to sub-sedentary exertion. The ALJ did not identify any inconsistencies between the Plaintiff's testimony and the objective medical record, but merely summarized medical records relating to Plaintiff's wrist and hip pain and migraine headaches.

In summarizing the objective medical record, the ALJ does point to instances where Plaintiff reported improvements to the pain associated with her right hip joint problems and

migraine headaches.[6] *See* AR 26 ("[Plaintiff] reported on January 18, 2016, that her pain improved with swimming and walking regularly"); *id.* ("[Plaintiff's] headaches appeared to improve with adjustments to her medications. . . . On April 15, 2015 [Plaintiff] stated that she has not had a migraine at all."). The Court cannot consider the ALJ's invocation of these instances of reported improvement as inconsistencies with Plaintiff's testimony. Although the Court does not expect an ALJ to "use 'magic words' to support a decision with a particular rationale, and a reviewing court may 'draw[ ] specific and legitimate inferences from the ALJ's opinion,'" *George v. Colvin*, 2015 WL 880632, at *2 (D. Or. March 2, 2015) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989)), an ALJ's findings must be "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds." *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991).

Here, the ALJ's discussion of Plaintiff's hip pain and migraine headaches are merely summaries of the medical records of those ailments. Indeed, so broad are the summaries that they include Plaintiff's reports of both improvements and worsening of her pain. For example, although the ALJ's summary of the medical records include Plaintiff reporting that "her [hip] pain improved with swimming and walking regularly," the summary also includes that Plaintiff "reported that pain in her right hip improved with injection *at times*" and that Plaintiff nevertheless reported "diffuse pain" and even "some acute pain from falls." AR 26 (emphasis added). Similarly, although the ALJ notes that that, "[o]n April 15, 2015, [Plaintiff] stated that

_____

[6] The ALJ does not mention any instances where Plaintiff reported improvement with her wrist pain. Indeed, the records the ALJ cites show Plaintiff reporting the same pain she testified to at the hearing. *See* AR 892 (noting that Plaintiff reported "pain over the Pisiform [wrist area] with pain that radiates to her small finger and proximally as well"); AR 930 (noting that Plaintiff reported "[i]ntermittent joint pain. Fire shooting pain down the R[ight] 4th finger").

she has not had a migraine at all," and "[b]y February 2016, [Plaintiff] stated that she is having

headaches maybe once every month and that they are mild in severity, the ALJ also noted,

however, that some "records do show some periods of increased headache symptoms," and "[o]n

August 23, 2017, [Plaintiff] alleged that she had developed more severe headaches." *Id.*

The ALJ's findings leave the Court guessing about the ALJ's grounds for rejecting

Plaintiff's testimony. *See* must be *Bunnell*, 947 F.2d at 345-46. The Court cannot affirm the ALJ

on a reason not contained in the ALJ's decision. *See Bray*, 554 F.3d at 1225. That leaves the

ALJ's stated reason for rejecting Plaintiff's testimony in support of sub-sedentary limitations was

that "the medical evidence of record does not support the degree to which [Plaintiff] said she is

limited." AR 26. Because the ALJ's other reasons for rejecting Plaintiff's symptom testimony

are improper, lack of support from the medical record is an insufficient reason to reject

Plaintiff's testimony.

### iii.  Mental Health Symptoms

There also are at least two errors with the ALJ's discounting Plaintiff's testimony

regarding her limitations caused by her mental health impairments because the alleged

limitations were unsupported by the objective medical evidence. First, again, it is legal error for

the ALJ to reject a "claimant's testimony as to the severity of symptoms merely because they are

unsupported by objective medical evidence." *Reddick*, 157 F.3d 715, 722 (9th Cir. 1998).

Second, the ALJ failed to consider the record as a whole. Identifying evidence that

undermines a claimant's subjective complaints is more complicated in the context of mental

health issues. The Ninth Circuit has explained:

> [I]t is error to reject a claimant's testimony merely because
> symptoms wax and wane in the course of treatment. Cycles of
> improvement and debilitating symptoms are a common occurrence,
> and in such circumstances it is error for an ALJ to pick out a few
> isolated instances of improvement over a period of months or years

and to treat them as a basis for concluding a claimant is capable of working. Reports of "improvement" in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms. They must also be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace. Caution in making such an inference is especially appropriate when no doctor or other medical expert has opined, on the basis of a full review of all relevant records, that a mental health patient is capable of working or is prepared to return to work.

*Garrison*, 759 F.3d at 1017-18 (citations omitted).

The ALJ here improperly cherry-picked the medical record for evidence of Plaintiff's improvement. Dr. Akins, reviewing the same record as the ALJ, testified that "for the most part this *is not* someone that has made huge strides" toward improved mental health. AR 58 (emphasis added). On July 5, 2016, Plaintiff reported to Dr. Scott Alvord that her symptoms of depression are "waxing and waning." AR 1365. The ALJ did not grapple with this medical evidence when rejecting Plaintiff's symptom testimony.

Specific examples are also illuminating. Although the ALJ discussed Plaintiff's reports that her mental health had stabilized in February, April, and September of 2013, *see* AR 24-25, the ALJ neglected to mention that at an August 26, 2013 examination Dr. Truhn concluded that Plaintiff was "experiencing severe mental health symptoms," that her "prognosis is poor," and that "part-time work" was the best long-term goal for her. AR 568-69. Similarly, although the ALJ noted that on December 27, 2013 Plaintiff "denied any recent depressive or anxiety symptoms," and on February 10, 2014, Plaintiff "had no new psychiatric complaints," *id.* The ALJ does not mention that the next day Dr. South diagnosed Plaintiff with PTSD and persistent depressive disorder and opined that Plaintiff's "anxiety and depressed mood could interfere with her maintaining gainful employment." AR 650.

Nor did the ALJ grapple with more recent evidence that Plaintiff's mental health symptoms were worsening. In October 2016, Plaintiff reported that she "was not regulating [her] emotions." AR 1399. Later that month, Plaintiff sought new medication because "she was feeling overwhelmed." AR 1402. On February 7, 2017 she requested new medication to handle ongoing anxiety. AR 1407. On May 2, 2017, she was prescribed an increased dosage of Nortriptyline after she reported increased irritability and difficulty sleeping. AR 1410-11.

The Commissioner argues that, although Plaintiff has presented a different rational interpretation of the medical evidence, where there are multiple interpretations, the Court should defer to the ALJ's rational interpretation. The Commissioner misunderstands the ALJ's error. An ALJ's rational interpretation of the complete medical record is entitled to deference. *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020). In interpreting the record, however, the ALJ may not ignore evidence that conflicts with his interpretation. *See Garrison*, 759 F.3d at 1017-18.

As these examples show, the ALJ's decision selectively cited treatment notes that supported his conclusion, without discussing contrary evidence, or providing reasons for disregarding the contrary evidence. The ALJ thus did not provide substantial evidence to support his conclusion. On remand, the ALJ should "weigh[] both the evidence that supports and the evidence that detracts" from his conclusions, and make a decision based on the entire record. *See Lingenfelter*, 504 F.3d at 1035. Otherwise, the Court has no basis to conclude that the ALJ made a rational interpretation of the complete record.

## C.  Lay Witness Statements

Finally, Plaintiff argues that the ALJ improperly rejected the competent lay witness statements of Rebecca M.,[7] a friend of Plaintiff who completed a third-party function report. The Commissioner responds that the ALJ correctly rejected Rebecca's statements because the statements diverged from medical evidence. The Commissioner also argues that, even if the ALJ erred in rejecting Rebecca's statements, the error was harmless.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v.* Comm'r, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony about a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114.

Rebecca completed a third-party function report on January 12, 2014. AR 329. Rebecca opined that Plaintiff could no longer independently care for herself or her daughters. AR 336. As for Plaintiff's mental health, Rebecca opined that Plaintiff's mental acuity was deteriorating; that Plaintiff suffered panic attacks and paranoia and did not handle changes well; and that Plaintiff could pay attention for no more than an hour and struggled with measurements and complex instructions. AR 334. Rebecca also noted a "major reduction" in Plaintiff's "physical activity," and reported that Plaintiff struggled with various physical tasks, including walking for more than

---

[7] To protect the privacy of both Plaintiff and Plaintiff's friend, the Court includes only the first name and first letter of the last name of Plaintiff's friend. She is then referred to only by her first name, Rebecca.

five minutes. *Id.* Rebecca reported that Plaintiff was physically able to complete chores like laundry, dishwashing, and vacuuming, but sometimes needed encouragement to overcome a mental block on completing those chores.

The ALJ gave only partial weight to Rebecca's opinion, considering her opinion when crafting the RFC but declining to adopt it entirely because "the severity alleged is not supported by the med[ical] records." AR 27. The ALJ also rejected some of Rebecca's opinion because it conflicted with Rebecca M.'s own observation that Plaintiff "shops every two to three days, drives, is able to pay bills, count change, and use a checkbook or money orders, and has no problems watching television, reading, playing on her phone, and playing video games." *Id.* Those are germane reasons to discount Rebecca's statements. *See Molina*, 674 F.3d at 1114.

Plaintiff argues that the Court should reject the ALJ's reasons for rejecting Rebecca's opinion because the reasons are no different from the improper reasons the ALJ relied on to reject Plaintiff's symptom testimony. Although the Court agrees that the ALJ erred in evaluating Plaintiff's subjective symptom testimony, Plaintiff's argument ignores that different standards govern the Court's review of the ALJ's findings. The ALJ must have clear and convincing reasons for rejecting a plaintiff's symptom testimony. *Lingenfelter*, 504 F.3d at 1036. "This is not an easy requirement to meet." *Garrison*, 759 F.3d at 1015. An ALJ need only germane reasons, however, for rejecting lay witness testimony. *Molina*, 674 F.3d at 1114. The different standards can result in different outcomes. *See, e.g.*, *Ammie B. v. Saul*, 2020 WL 1984894, at *8-10 (D. Or. Apr. 27, 2020) (reversing the ALJ's decision regarding the plaintiff's subjective symptom testimony but affirming the ALJ's decision regarding lay witness testimony).

## D. Remand for Further Proceedings

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246

F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d at 999. The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

The ALJ committed reversible error in rejecting Plaintiff's subjective symptom testimony. The Court does not, however, find that the record is free of all conflicts and ambiguities. The Court therefore declines to credit Plaintiff's erroneously rejected statements as true.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND

REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 29th day of March, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge